UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DAVID SOMANG BAE,                          CIVIL ACTION NO.
and NATHAN MUNN,
      Plaintiffs
v.                                         JUDGE

JEREMY DELLAFIORA,                         MAGISTRATE JUDGE
LUXURY PROPERTIES, INC.,
and TAJ MAHAL PROPERTIES,
INC.,
      Defendants

## COMPLAINT

The Plaintiffs respectfully aver that:

### I. JURISDICTION

1. This action is brought, inter alia, under the Fair Housing Act, 42 U.S.C. § 3601, *et seq*. The jurisdiction of this Court is proper under 28 U.S.C. §§ 1331, 2201, and 2202. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 over claims arising under the laws of Louisiana, as they arise out of the same case or controversy as the federal claims.

### II. PARTIES

2. Plaintiff, David Somang Bae, is a resident of East Baton Rouge Parish, Louisiana.

3. Plaintiff Bae is a member of a protected classification. He is Asian, of South Korean origin.

4. Plaintiff, Nathan Munn, is a resident of East Baton Rouge Parish, Louisiana.

5. Defendant Jeremy "Red" Dellafiora is a resident of East Baton Rouge Parish, Louisiana.

6. Defendant Dellafiora is Caucasian.

7. Defendant Luxury Properties, Inc. is a Louisiana Corporation domiciled in East Baton Rouge Parish, Louisiana.

8. Defendant Taj Mahal Properties, Inc. is the former name of the corporate entity Luxury Properties, Inc.

### III. FACTS

9. This case concerns the defendants' discriminatory refusal to negotiate; making statements indicating a preference based on race; threatening, intimidating, and interfering with the plaintiffs' exercise of housing rights; and other conduct that made housing unavailable to the plaintiffs.

10. David Somang Bae (Mr. Bae) is currently a third-year law student studying at Louisiana State University.

11. In the spring of 2010, Mr. Bae sought an apartment for the 2010-11 school year to share with his intended roommate, Nathan Munn (Mr. Munn).

12. At this time, Mr. Munn resided in Michigan.

13. In March or April of 2010, Mr. Bae viewed an advertisement for an apartment rental that was located at 229 East State Street in Baton Rouge, Louisiana 70802 ("the apartment").

14. The advertisement requested that interested parties respond by email and provide a biographical summary.

15. After viewing the advertisement, Mr. Bae responded by email explaining that he was a law student and expressing his interest in viewing the advertised apartment.

16. In or around early April of 2010, Jeremy Dellafiora (Mr. Dellafiora) and Mr. Bae spoke by telephone and set up an appointment to view the apartment.

17. Approximately one week later, Mr. Bae met Mr. Dellafiora at the apartment located at 229 East State Street. Mr. Dellafiora explained to Mr. Bae that the advertised apartment was $1200 per month and required a $1200 deposit.

18. During this meeting, Mr. Dellafiora told Mr. Bae that he and Mr. Munn had to provide post-dated checks covering the rent for each month of the rental agreement.

19. Before signing the lease, Mr. Bae told Mr. Dellafiora that Mr. Munn intended to change banks upon moving to Baton Rouge and that, accordingly, Mr. Munn would not be able to write all of the post-dated checks until he moved to Louisiana. Mr. Dellafiora agreed.

20. On or about April 20, 2010, Mr. Bae signed a twelve-month lease agreement for the apartment located at 229 East State Street. The lease agreement identified the apartment as "# Balcony" and stated that the rental period was to run from August 1, 2010 to July 31, 2011.

21. The lease was countersigned by Mr. Dellafiora. The lease provided that all rental payments were to be made to "Luxury Properties, PO 4107, 70821, rent@geauxluxury.com."

22. At the time of the lease-signing, Mr. Bae gave to Mr. Dellafiora twelve post-dated checks of $600.00 each, representing his half of the rent for the lease period, as well as a $600.00 check to cover his share of the deposit.

23. Mr. Bae also gave to Mr. Dellafiora approximately nine of the requested post-dated checks from Mr. Munn of $600.00 each, representing a partial advance payment of Mr. Munn's half of the rent for the lease period. In addition Mr. Bae gave Mr. Dellafiora a $600.00 check from Mr. Munn, representing Munn's share of the deposit.

24. At this meeting, Mr. Dellafiora and Mr. Bae made an oral agreement that Mr. Dellafiora would get the remainder of the post-dated checks at some point before move-in.

25. The lease executed by Mr. Bae and Mr. Dellafiora made no mention of the requirement to pre-pay all rental amounts due under the lease using post-dated checks.

26. On June 18, 2010, Mr. Bae emailed Mr. Dellafiora requesting to move into the apartment a few days early, for a prorated amount.

27. In an email response dated June 19, 2010, Mr. Dellafiora wrote back to Mr. Bae, expressing his concern that he had not yet received correct payment for the apartment; Mr. Bae replied on June 19, 2010, stating his understanding that, per their oral agreement, Mr. Bae and Mr. Munn had paid all that was required of them to date.

28. Mr. Dellafiora responded on June 20, 2010, asking Mr. Bae if he was "stupid, or just forgetful." Mr. Bae responded on June 20, 2010, restating his understanding that under their

4

oral agreement Mr. Bae and Mr. Munn were not behind on their payments, because Mr. Dellafiora had agreed to permit Mr. Munn to provide post-dated checks at a later date. Nevertheless, in the spirit of cooperation, and in an effort to negotiate an early move-in date, Mr. Bae offered to write the remaining post-dated checks immediately on behalf of Mr. Munn.

29. Mr. Dellafiora wrote to Mr. Bae on June 21, 2010, that the "payment terms [were] non-negotiable," without addressing or acknowledging Mr. Bae's offer to write the post-dated checks himself on behalf of Mr. Munn. In an email response that same day, Mr. Bae offered a second time to pre-pay the post-dated checks on behalf of Mr. Munn, "to demonstrate…that [they were] indeed acting with good faith."

30. In an email dated June 22, 2010, Mr. Dellafiora rejected Mr. Bae's offer to pre-pay with his own post-dated checks on behalf of his roommate. Mr. Dellafiora made a new demand: either (a) Mr. Bae could become the person solely responsible for the lease and rewrite twelve post-dated checks to pre-pay the full lease amount; or (b) Mr. Munn could provide the few remaining post-dated checks, which Mr. Dellafiora had earlier agreed to accept up until the move-in date. Mr. Dellafiora threatened to "get mad and tear up [their] lease" if he did not receive the remaining post-dated checks. He then told Mr. Bae to "[q]uit e-mailing me like a girl," and told him to "[p]ost-date, pre-pay, or go get f[-]d." Mr. Dellafiora closed by instructing: "[M]ake it right by following instructions, or we can part ways really fast…."

31. Mr. Bae attempted to satisfy Mr. Dellafiora's new demand by writing back twice to indicate that he was willing to assume full responsibility for the lease, and was willing to rewrite the post-dated checks in the full amount for the entire lease term. He communicated his

5

agreement on both June 22, 2010 and June 23, 2010, seeking confirmation in both emails that this arrangement was satisfactory.

32. Although Mr. Bae had offered to comply with the new demand from Mr. Dellafiora's June 22, 2010 email, Mr. Dellafiora changed the terms again: in an email dated June 24, 2010, he refused to accept full payment from Mr. Bae and demanded the remaining checks from Mr. Munn. Mr. Dellafiora told Mr. Bae not to contact him unless/until Mr. Munn sent in his remaining post-dated checks.

33. Even though Mr. Bae had on four occasions offered to meet Mr. Dellafiora's demand of pre-payment of the entire lease amount in the form of post-dated checks, Mr. Dellafiora refused Mr. Bae's offers and in that same June 24, 2010 email accused Mr. Bae of asking too much and engaging in "a very asian quality of haggling that I do not get in to." Mr. Dellafiora stated further: "If you want to haggle with my terms, I will forward your security deposit, and you can go to china town to banter over live chickens."

34. Mr. Dellafiora's actions served no legitimate purpose and were committed because of Mr. Bae's race and national origin.

35. Because of Mr. Dellafiora's racially explicit emails and refusal to accept Mr. Bae's attempts to provide the pre-paid lease amount, Mr. Bae became aware that Mr. Dellafiora had no intention of letting him move into the apartment.

36. Mr. Bae informed Mr. Dellafiora via email dated June 24, 2010 that he and Mr. Munn would be looking for another apartment.

6

37. Mr. Bae requested the return of his and Mr. Munn's security deposit and pre-paid checks in the email dated June 24, 2010.

38. Mr. Dellafiora responded on June 25, 2010, stating that he would return the security deposit after he had found a new tenant for the apartment. Mr. Dellafiora then accused Mr. Bae of having "the mind of a young child." He further warned Mr. Bae to "quit bothering [him]" or else he would keep the security deposit; he also threatened to sue Mr. Bae if he sent "another annoying email."

39. Mr. Dellafiora has not returned Mr. Bae's or Mr. Munn's security deposit.

40. Mr. Dellafiora also never returned Mr. Bae's or Mr. Munn's post-dated checks.

41. Fearing that Mr. Dellafiora might cash one or more of his post-dated checks, Mr. Bae sought to cancel his checks but was deterred by the high cost of doing so; instead he was forced to close his bank account and change to a new bank.

42. After changing banks, Mr. Bae was forced to purchase all new checks.

43. Mr. Dellafiora's actions forced Mr. Bae to scramble to find another apartment for the coming school year within a very short time frame.

44. Mr. Bae had to miss several days of work in order to promptly secure housing.

45. Mr. Bae and Mr. Munn ultimately moved into a different apartment that was smaller than the apartment advertised by Mr. Dellafiora.

46. Mr. Dellafiora's failure to return the security deposit and other actions caused Mr. Bae and Mr. Munn financial hardship.

7

47. Mr. Dellafiora's actions also caused Mr. Bae to suffer mental and emotional harm, including feelings of anger, frustration, and despair.

48. Mr. Dellafiora wrongfully refused to negotiate; expressed a preference based on race; and threatened, intimidated, and interfered with the Plaintiffs' exercise of housing rights. These actions made housing unavailable on the basis of race and national origin and directly caused the harm suffered by Mr. Bae and Mr. Munn.

## IV. STATEMENT OF CLAIMS

**FIRST CAUSE OF ACTION – FAIR HOUSING ACT, 42 U.S.C. § 3604(a), U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT REGULATIONS, 24 C.F.R. § 100.60(a)**

47. Plaintiffs re-allege and herein incorporate by reference the allegations set forth in paragraphs 1-48 above.

48. By their conduct set forth above, Defendant Jeremy Dellafiora and Defendant Luxury Properties, Inc. refused to negotiate and made housing unavailable because of race and national origin, thus violating the Fair Housing Act, 42 U.S.C. § 3604(a), and the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. § 100.60(a).

**SECOND CAUSE OF ACTION – FAIR HOUSING ACT, 42 U.S.C. § 3604(c), U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT REGULATIONS, 24 C.F.R. § 100.75**

49. Plaintiffs re-allege and herein incorporate by reference the allegations set forth in paragraphs 1-48 above.

50. By their conduct set forth above, Defendant Jeremy Dellafiora and Defendant Luxury Properties, Inc. made, printed, or published, or caused to be made, printed, or published a notice, statement, or advertisement, with respect to the rental of a dwelling that indicated a preference, limitation, or discrimination based on race and national origin, or intended to make such a preference, limitation, or discrimination, thus violating the Fair Housing Act, 42 U.S.C. § 3604(c), and the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. § 100.75.

## THIRD CAUSE OF ACTION – FAIR HOUSING ACT, 42 U.S.C. § 3617

51. Plaintiffs re-allege and herein incorporate by reference the allegations set forth in paragraphs 1-48 above.

52. By their conduct set forth above, Defendant Jeremy Dellafiora and Defendant Luxury Properties, Inc. coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of rights granted or protected by 42 U.S.C. § 3604(a), thus violating the Fair Housing Act, 42 U.S.C. § 3617.

## FOURTH CAUSE OF ACTION – LOUISIANA EQUAL HOUSING OPPORTUNITY ACT, LA. R.S. § 51:2606(A)(1)

53. Plaintiffs re-allege and herein incorporate by reference the allegations set forth in paragraphs 1-48 above.

54. By their conduct set forth above, Defendant Jeremy Dellafiora and Defendant Luxury Properties, Inc. refused to negotiate and made housing unavailable because of race and national origin, thus violating the Louisiana Equal Housing Opportunity Act, La. R.S. § 51:2606(A)(1).

## FIFTH CAUSE OF ACTION – LA. CIV. CODE ANN. ART. 2315

## LOUISIANA LAW OF CONVERSION

55.   Plaintiffs re-allege and herein incorporate by reference the allegations set forth in paragraphs 1-48 above.

56.   By their conduct set forth above, Defendant Jeremy Dellafiora and Defendant Luxury Properties, Inc. wrongfully exercised or assumed authority over the property of another, thus violating La. Civ. Code Ann. art. 2315 and the Louisiana law of conversion.

## PRAYER FOR RELIEF

**WHEREFORE,** David Somang Bae and Nathan Munn pray:

A. That the Court declare Defendants' actions complained of herein to be in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, et seq., the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. §§ 100.60(a) and 100.75, the Louisiana Equal Housing Opportunity Act, La. R.S. § 51:2606(A)(1), La. Civ. Code Ann. art. 2315, and the Louisiana law of conversion.

B. That Defendants, their agents, employees, and successors be permanently enjoined from discriminating against any person on the basis of race or national origin in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, et seq., the Louisiana Equal Housing Opportunity Act, La. R.S. § 51:2606(A)(1), or the U.S. Department of Housing and Urban Development Regulations, 24 C.F.R. §§ 100.60(a) and 100.75.

C. That appropriate compensatory and punitive damages be awarded to Plaintiffs and against Defendants.

D. That Defendants be ordered to take appropriate, affirmative steps to ensure that the activities complained of herein are not engaged in again by Defendants or any of their agents or employees.

E. That Plaintiffs be awarded costs and reasonable attorney's fees in this action.

F. That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted,

TULANE LAW CLINIC
6329 Freret Street
New Orleans, LA  70118
(504) 865-5153
(504) 862-8753 (fax)

By:

s/ **Stacy Seicshnaydre**
STACY SEICSHNAYDRE, Bar No. 22193, T.A.
E-mail: sseicshn@tulane.edu
M. LUCIA BLACKSHER, Bar No. 26605
E-mail: lblacksh@tulane.edu
  Supervising Attorneys
Christopher Chido
Anders Holmgren
  Student Attorneys

*Attorneys for Plaintiff*

11